## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GARY LOUGHNEY, and** | : | **No. 3:06cv1844** |
| **MARY LOUGHNEY, his wife,** | : | |
| **Plaintiffs** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **ENCOMPASS INSURANCE,** | : | |
| **Defendant** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

_____Before the court is defendant's motion for summary judgment (Doc. 10) in this declaratory judgment action.  Having been fully briefed, the matter is ripe for disposition.

**Background**

   This case centers around the amount of unisured/underinsured motorist (UM/UIM) coverage available to the plaintiffs under the automobile insurance policy issued them by the defendants.  Plaintiff Gary Loughney was involved in an automobile accident on March 25, 2000.  (Defendant's Statement of Undisputed Material Facts (Doc. 12 at ¶ 2).[1]  Defendant insured him, providing a policy that had liability limits of $300,000.  (Id. at ¶ 3).  The policy also included protection for accidents with underinsured and uninsured ("UM/UIM") motorists.  (Id. at ¶ 4).  The

---

[1]We cite to this statement of facts, accepting them as true, where the facts are undisputed.  In this case, plaintiffs do not deny any of the defendant's statements of material fact, though they add their own statements of other factual material.

policy contained stacked limits for this coverage of $35,000 per vehicle, or a total of $70,000.  (Id. at ¶ 4).  As coverage for this accident, defendant provided plaintiffs with $70,000 of UM/UIM coverage on August 12, 2005.  (Id. at ¶ 6).  Defendant insists that this payment is all that plaintiffs are due under the insurance policy in question.  (Id. at ¶ 9).

Plaintiffs signed a "Pennsylvania Supplemental Automobile Application" upon purchasing the insurance policy in 1991.  (Id. at ¶ 5).  In that application, plaintiff Gary Loughney indicated that he chose to reject underinsured motorist coverage. (See Exhibit A to Complaint (hereinafter "Complt") attached as Exhibit A to Notice of Removal (Doc. 1)).  On the same form, he also indicated that they chose to accept a lower limit on the policy for UM/UIM coverage.  (Defendant's Statement of Material Facts at ¶ 8).

On September 7, 2006, plaintiffs filed the instant lawsuit in the Court of Common Pleas of Luzerene County, Pennsylvania.  (See Complt.).  The suit sought declaratory judgment from the court that the authorization was invalid and that the policy should be reformed to provide the plaintiff with UM/UIM coverage to the policy's stacked limits of $600,000.   Plaintiffs argued that the authorization form for those reduced benefits was inadequate as a matter of law.  Plaintiffs also argued that the insurance policy did not contain an "important notice" summarizing the benefits available for Pennsylvania motor vehicles, and thus the defendant had a duty to prove that plaintiff's waiver of UM/UIM coverage was knowing and intelligent.

2

On September 19, 2006, defendant remove the case to this court, citing diversity jurisdiction.  (Doc. 1).  After discovery, the defendant filed a motion for summary judgment.  Both sides then submitted briefs, bringing the case to its present posture.

**Jurisdiction**

Plaintiffs are citizens of Pennsylvania.  Defendant is a business incorporated in Illinois with its principal place of business in that state.  Because the parties are from different states and the amount in controversy exceeds $75,000, we have diversity jurisdiction to hear this case.  See 28 U.S.C. § 1441.

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion.  International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The

3

burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party.  <u>Anderson</u>, 477 U.S. at 248 (1986).  A fact is material when it might affect the outcome of the suit under the governing law.  <u>Id.</u>  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.  <u>Celotex v. Catrett</u>, 477 U.S. 317, 322 (1986).

**Discussion**

Pennsylvania's Motor Vehicle Financial Responsibility Law (MVFRL) "provides that insurers must offer UM/UIM coverage equal to bodily injury liability coverage except when the insured requests in writing UM/UIM coverage in amounts less than the limits of liability for bodily injury."  <u>Tukovits v. Prudential Ins. Co. of Am.</u>, 672 A.2d 786, 789 (Pa. Super. 1996).   The question in this case is whether the request signed by the plaintiffs limiting their UM/UIM coverage meets the requirements of the MVFRL for valid waivers of coverage.  In evaluating this waiver, we employ the standards courts have developed under Section 1734[2] of the MVFRL because "[a]lthough the General Assembly clearly designed both Section 1731 and 1734 as

---

[2]That section reads: "A named insured may request in writing the issuance of coverages under sectino 1731 (relating to availability, scope and amount of [uninsured and underinsured motorist] coverage) in amounts equal to or less than the limits of liability for bodily injury."  75 Pa.C.S. § 1734.

relating to UM/UIM coverage, it is just as plain that it directed each provision to a different form of election: Section 1731(c.1) to outright waiver/rejection of coverage . . . and Section 1734 to selection of specific limits." <u>Lewis v. Erie Ins. Exch.</u>, 793 A.2d 143, 153 (Pa. 2002).  This is not a case where the insurer claims that the insured waived UM/UIM coverage and refuses to provide any compensation at all. The standards related to a total waiver of coverage under Section 1731 therefore do not apply.  Here, the parties disagree over whether plaintiffs properly waived down a portion of UM/UIM coverage.   We shall therefore apply the standards developed for Section 1734.

Pennsylvania courts have concluded that under § 1734 "to constitute a valid request for 'specific limits coverage' . . . the named insured must sign the 'writing' and the 'writing' must include an express designation of the amount uninsured and underinsured coverage requested." <u>The Hartford Ins. Co. v. O'Mara</u>, 907 A.2d 589, 602-603 (Pa. Super. 2006).   State law does not dictate a particular style, and "the language of the 'writing' does not violate the mandate of Section 1734 because [reviewers] could conceive of a better way to fashion the language." <u>Id.</u> at 603. Failure to comply with this requirement of a written consent to reduction of coverage, however, makes such a waiver invalid and the insurer liability for coverage to the policy limits for bodily injury.[3] <u>See, e.g.</u>, <u>National Mut. Ins. Co. v. Heintz</u>, 804 A.2d

---

[3]Plaintiffs here contend that the failure of plaintiff Gary Loughney to execute an "important notice" pursuant to Section 1791 of the MVFRL "shifts the burden of proof unto the Defendant relative to the existence of a valid writing under Section 1734." (Plaintiffs'

1209, 1217 n.7 (Pa. Super. 2002) (holding that "[i]f the request [for lower limits] was

not made in writing, then: (1) the lower limits allegedly selected by the insured are a

nullity; and (2) UM/UIM coverage is deemed to be equivalent to the bodily injury

liability limits.").

Plaintiffs argue that they did not execute a valid instrument in lowering the limits of

their UM/UIM coverage.  They contend that the waiver form in question is so "confusing" as

to not constitute a writing.  (Plaintiffs' Brief at 5).  The form, plaintiffs point out, contains two

relevant sections.  Section A bears the label "Rejection of Underinsured Motorist

Protection" and Part C is titled "Lower Limits Request Authorization."  (Id.).  The bottom of

the form contains a notation declaring that "'Your Underinsured Motorist Coverage Limits

Selection Will Be Processed Only if You Have Signed Paragraph A Above."  (Id.).  This

form, plaintiffs argue, is confusing because it simultaneously tells the insured to reject

lower UM coverage and request lower limits on such coverage.  An insured is bound to be

confused by such a form, plaintiffs insist, since in order to obtain reduced UM/UIM

─────────────────

Brief in Opposition to Defendant's Motion for Summary Judgment (Doc. 13) at 6, 9).
Section 1791 of that act provides a "presumption that the insured has been advised of the
benefits and limits available under this chapter provided [a] notice [describing the minimum
requirements for automobile insurance policies in Pennsylvania] in bold print of at least ten-
point type is given to the application at the time of application for original coverage."  75
Pa.C.S. §1791.  Recent Pennsylvania appellate court decisions have determined, however,
that failure to provide the required "important notice" under Section 1791 does not change
the standard under which courts are to evaluate the validity of a writing under Section
1734.  See, e.g., Kline v. Old Guard Ins. Co., 820 A.2d 783, 787 (Pa. Super. 2003) (finding
that "we may no longer participate in an analysis of whether the insured had 'knowingly and
intelligently' waived UIM protection, *even where the parties had stipulated that the insured
had not received the Important Notice mandated by section 1791*.") (emphasis in original);
Nationwide Mutual Ins. Co. v.Heintz, 804 A.2d 1209, 1220 (Pa. Super. 2002) (finding that
no remedy is available under Section 1734 for failure to comply with Section 1791).  We
therefore will not apply the knowing and intelligent standard to the writing in this case.

coverage, the insured must first reject that coverage altogether.  Plaintiffs also argue that the form adds to the confusion by including two columns in the section where insureds can choose reduced coverage.  One column describes a combined single limit (per person) and the other describes a "split limit" (per person/per accident).  The form places the word "or" between these two columns, but does not explain the difference between the tyeps of coverage.

"To comply with Section 1734, the language utilized need only convey an insured's desire to purchase uninsured and underinsured coverage in amounts less than or equal to bodily injury limits and the amount of the requested coverage."  O'Hara, 907 A.2d at 603. Plaintiff initially signed a waiver of Uninsured Motorist Protection on February 5, 1991.  At the top of that form, plaintiff signed a section that stated that he agreed to reject underinsured motorist coverage for himself and his household, and informed him that such coverage offered protection "for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages."  (Complt. Exh. A).  Plaintiff Gary Loughney affirmed that "I knowingly and voluntarily reject this coverage."  (Id.).  Loughney then initialed another section of this form, which read that "I wish a lower limit of Underinsured Motorists Coverage than my policy's limit of liability for Bodily Injury."  (Id.).  He then initialed a box that indicated he would have coverage of $35,000 per person under this reduction.  (Id.).  As part of that selection, the form required him to sign the portion of the form rejecting underinsured motorist coverage. (Id.).

We find that this form meets the requirements of Section 1734 of the MVFRL. Plaintiff indicated in writing that he wished to accept a limit lower than his policy's liability

7

limit for underinsured motorist coverage.   He initialed the portion of the form that indicated

that he would receive $35,000 per person in case of an accident with such a motorist.  The

law requires only that plaintiff express his desire for reduced UM/UIM limits and the amount

that the policy will cover.  The writing in question meets those standards.  Plaintiffs'

complaints are not that they did not sign this document or express a preference for a level

of coverage, but that the form of the document was improper.  In ths setting, however, "the

language of the 'writing' does not violate the mandate of Section 1734 because [a

reviewing court] could conceive of a better way to fashion the language."  O'Hara, 907 A.2d

at 603.  We must therefore conclude that the plaintiffs' waiver of full UM/UIM coverage was

proper, and we will grant defendant's motion for summary judgment in this case.[4]  An

appropriate order follows.

---

[4]We note the words of the Pennsylvania Superior Court after it rejected an effort to reform an insurance policy on similar grounds: "Lest our holding appear unduly harsh, we note the following.  It is undisputed that, for many years, the [plaintiffs] paid lower premiums in exchange for reduced UIM coverage.  The Heintzes sought to raise their coverage only after a devastating accident involving an underinsured motorist.  In Donnelly, 720 A.2d at 454, our Supreme court stressed that the policy behind the MVFRL was to stem the rising cost of insurance in Pennsylvania.  If we are to reform the Policy and grant the [plaintiffs] greater coverage than they paid for, we would contravene this cost-containment policy because insurance companies would pass along these additional costs to other insureds."  Heintz, 804 A.2d at 1220.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GARY LOUGHNEY, and** | : | **No. 3:06cv1844** |
| **MARY LOUGHNEY, his wife,** | : | |
| **Plaintiffs** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **ENCOMPASS INSURANCE,** | : | |
| **Defendant** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**ORDER**

_____**AND NOW**, to wit, this 28th day of September 2007, the defendant's motion

for summary judgment (Doc. 10) is hereby **GRANTED**.  The Clerk of Court is

directed to close the case.


**BY THE COURT:**


**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**

9